## Affidavit of William Bayer

I William Bayer swear and state as follows:

### Background

1. I am the Director of Northeast Operations of SDS International, Inc. ("SDS") and was the technical lead for the development of the SDS written and oral presentations for Solicitation No. W911SE-07-R-0016 (the "Solicitation"). I was chosen as technical lead because of my knowledge of training, training systems and procedures and training operations. As technical lead, I am also knowledgeable of SDS's history of providing the JID with training services involving the application of Department of Defense ("DoD") training strategies. [1]



2. Unless stated otherwise all representations herein are based upon my own personnel knowledge. I personally gained that knowledge based upon my review of the solicitation requirements, my assistance in preparation of SDS's proposal and my review of and experience with the DoD's Training Transformation strategy enumerated in the DoD documents referenced in the solicitation. SDS has supported the JID for five years in the infancy of the development of JID programs for Training Transformation initiatives. During that time SDS became knowledgeable concerning the Training Transformation solicitation requirements in areas such as Instructional System Development (ISD), Live, Virtual and Constructive (LVC), Advanced Distributed Learning (ADL) exercise support, part task trainer, and instruction. I have also had discussions with Mr. George Gennin SDS's CEO that concerned SDS's protest at the Government Accountability Office ("GAO")

### The Purpose of My Affidavit

3. I am submitting this affidavit in support of SDS's request for a preliminary injunction at the United States Court of Federal Claims ("USCFC") in connection with the award of a contract to HiPK by the Army Contracting Agency ("ACA") under Solicitation No. W911SE-07-R-0016 (the "Award"). The purpose of my Affidavit is to provide the Court with a clear understanding of a) Training

---

[1] All assertions contain in my affidavit are based upon the DoD Training Transformation Implementation Plan dated June 9, 2004 (TTIP) (Attachment 1); the Chairman of the Joint Chiefs of Staff Instruction (CJCSI 3500.01C) (Attachment 2); the Performance Work Statement (PWS) incorporated into the solicitation (Attachment 3); SDS's Full Time Equivalent (FTE) Staffing Matrix for base services that was contained in SDS's technical proposal (Attachment 4) and the section of SDS's technical proposal which specifically addressed SDS's approach to addressing Training Transformation (Attachment 5).



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

Transformation in general; b) the specific technical functions of the PWS that required that offerors address Training Transformation within their technical approaches, including the base services specified in the Solicitation and the PWS; and c) SDS's technical approach to addressing Training Transformation, including the Full Time Equivalent (FTE) staffing that SDS intended to devote to fulfilling the Training Transformation technical functions specified in the PWS.

4. In this affidavit, I will discuss sections of the solicitation and the PWS that required consideration of DoD's Training Transformation policy. I will address how the Training Transformation requirement in the Solicitation influenced both cost and manning for the base contract. Finally I will address the specific Full Time Equivalent (FTE) positions outlined in SDS's technical approach that were intended to address technical functions related to Training Transformation.

Case 1:07-cv-00881-JPW Document 40-2 Filed 02/07/2008 Page 23 of 35

5. I want to make it clear to the Court that all the assertions herein are based upon my experience in this program, the specific wording of the PWS and information contained in DoD policy documents that were incorporated into the solicitation as mandatory directives. I want to make it clear to the Court that, in preparing its technical approach and its proposed Full Time Equivalent staffing, SDS was relying upon the wording of the PWS (Attachment 3), specifically wording which called out key knowledge enablers under certain functional requirements in the PWS.

6. Although an understanding of DoD's Training Transformation policy would assist an offeror in addressing the PWS requirements, SDS's technical approach and its proposed staffing was based upon the specific wording of the PWS (Attachment 3) and not some abstract theory concerning DoD Training Transformation policy.

7. I want to make this point clear because I want to specifically address the Army Contracting Agency's ("ACA") alternative allegations a) that the Solicitation did not require offerors address Training Transformation in their technical approaches or b) that the Solicitation required only that offerors propose sufficient staffing to meet Training Transformation requirements contained in potential Task Orders issued after award of a contract. Those different interpretations of the PWS requirements that have been offered by the ACA throughout this dispute, a dispute that included SDS's initial good faith attempt to resolve this matter at the Agency level, its subsequent protest at the GAO, and now finally this at the U.S. Court of Federal Claims.

**<u>GAO's and ACA's Positions on Training Transformation</u>**

8. In support of SDS's GAO protest I submitted a detailed affidavit that contained all of the information discussed in the sections below. Subsequently, I understand through discussions with George Gennin, that GAO, at the request of the Army



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

Contracting Agency ("ACA") conducted an out prediction conference after the filing of the Agency Report and several amendments to the Agency Report. The GAO attorney assigned to the protest notified the parties that GAO apparently had concluded that the Solicitation and PWS did not contain **any** requirement that the offerors address Training Transformation in their proposals.

9. For the reasons discussed below, an approach based upon GAO's interpretation would effectively mean that the program for which the offerers were to provide the applicable training services covered by the Solicitation would consist of paper intensive class room based training that primarily relied upon written non-electronic training materials rather than the web-based information technology such as Advanced Distributed Learning ("ADL"). I will elaborate on this conclusion under the following sections which focus on the wording of the PWS and the Solicitation at issue. All of this information previously was submitted in my prior affidavit to GAO and is based upon my personnel knowledge.



**<u>Training Transformation</u>**

*<u>a. Background</u>*

10. Training Transformation is a DoD program designed to leverage emerging information technology such as Advanced Distributed Learning (ADL) through web-based services to assist in asynchronous and synchronous training. It uses key state-of-the-art, knowledge enablers (the "Enablers") promoting joint training efficiency. Its purpose is to enhance DoD's ability to adopt an evolving process to transform training and education, and improve integrated DoD operations and to promote continuous transformation and to accommodate current and emerging training challenges.

11. The solicitation directed offerors to address Training Transformation since it specifically noted that the DoD TTIP was a directive as specified under section 4.6 of the PWS.

12. That section stated in relevant part:

> 4.6 Technical Exhibit IV: Documents and References ARE directive in nature. These are cited within Section 3 Requirements relative to specific functions, actions or tasks and, when appropriate....Department of Defense Training Transformation Implementation Plan, 9 June 2004 (PWS-Attachment 3, page 42).

13. In addition the following documents listed below ARE directive in nature, as specified under section 4.6 of the PWS and are tied to Training Transformation Initiatives:



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

- *CJCSI 3500.01C, Joint Training Policy for the Armed Forces of the United States, 31 July 2004.*
- *CJCSM 3500.03A, Joint Training Manual for the Armed Forces of the United States, 1 Sept 2002.*
- *CJCSM 3500.03, Universal Joint Task List (UJTL).*
- *Department of Defense Strategic Plan for Advanced Distributed Learning, 3 April 1999.*

14. In accordance with the requirement identified at PWS Section 1.1.4 that the JTAO Interface training program comply with CJCSI 3500.01C, it was paramount that the key Training Transformation initiatives identified in CJCSI 3500.01C be addressed.



b. Training Transformation Key Enablers and Initiatives

15. The TTIP contains the following Training Transformation initiatives as key enablers to assist DoD's evolving global training and education presence:

**Joint Knowledge Development and Distribution Capability (JKDDC).** The JKDDC is a key enabler that focuses on joint individual training and is responsible for establishing the Global Knowledge Network. A mature JKDDC is envisioned as the premier conduit for relevant, timely, and globally accessible joint knowledge and information assets in support of Combatant Commanders, Services, and potentially, the interagency community partners. The JKDDC will help transform the Total Force through the power of knowledge and information by creating, storing, imparting, and applying knowledge to enhance an individual's ability to think joint intuitively. (TTIP, pp. 8-11.)

**Global LVC Training.** The future LVC training environment also enables Training Transformation's global presence. It creates joint warfighting conditions through a networked collection of interoperable training sites and nodes that synthesize personnel, doctrine, and technology to achieve combatant commander and service training requirements. The LVC environment melds existing operational and strategic facets of exercises with live forces, creating a more robust and realistic experience. (TTIP, pp. 12-16.)

**Joint National Training Capability (JNTC).** With the focus on collective training the JNTC is responsible for building the global LVC training environment. The JNTC establishes and operates an affordable joint training capability that enables integration of combatant command, service, and government agency training components to "train like we operate" to support national security goals. It can be used to train forces against a general threat, to conduct mission rehearsal against a specific threat, or to experiment with new doctrine, tactics, techniques, procedures,



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

Joint Operations Concepts, and equipment. This infrastructure consists of credible and adaptive opposing forces, common ground truth, and high-quality feedback, and provides joint context for training realism. The JNTC accomplishes these ends through the Training Transformation business model. (TTIP, pp. 12-16.)

**Joint Assessment and Enabling Capability (JAEC).** The JAEC has primary responsibility for establishing the comprehensive architecture for assessing how well Training Transformation accomplishes its missions and objectives, in addition to meeting the needs of its customers. The JAEC assists leaders in assessing the value of transformational initiatives on individuals, units, staffs, organizations, and processes by measuring how well transformed joint training and education meets validated readiness requirements. Additionally, the JAEC enables readiness through the full implementation of the Joint Training System by linking training to mission requirements and ensuring training standards are met. (TTIP initiative, pp. 17-19.)



16. SCORM conformance is specifically referenced under section 3.1.3 of the PWS (Attachment 3, page 14). SCORM conformance is a specific Training Transformation requirement under ADL for e-learning. SCORM conformance provides the packaging of all e-learning information for use and reuse and if needed hosting on a Learning Management System (LMS). At the heart of the Training Transformation initiatives is the use of SCORM programming. SCORM is a collection of standards and specifications adapted from multiple sources to provide a comprehensive suite of e-learning capabilities that enable interoperability, accessibility and reusability of Web-based learning content. Each of the SCORM 2004 packaging capabilities are in various versions and require both advanced knowledge of SCORM and also of SCORM ADL programming ability.

17. The Training Transformation initiatives provide capabilities based training for Universal Joint Task List (UJTL) traceability through service Mission Essential Task Lists (METL) deriving the Joint METL (JMETL) based capabilities for mission areas and training. They also leverage ADL technologies such as SCORM, Sharable Content Object (SCO), Extensible Mark-up Language (XML)/Hyper Text Mark-up language (HTML) tagging as a key enabler for the delivery of asynchronous and synchronous training to DoD.

18. To summarize, the enablers for Training Transformation include ADL, SCORM, LVC training and JNTC training to support the JID role as the JTAO trainer for USJFCOM. As indicated in the discussion below the repeated statement of requirements for ADL, SCORM, LVC training and JNTC training mandated both critical and non-critical staffing that possessed specific technical skills.



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

19. If one addresses Training Transformation, one or all of the enablers apply based on the type of training being developed/executed. On the other hand, if one addresses ADL, Sharable Content Object Reference Model (SCORM), Live, Virtual, Constructive (LVC), Web Based Training (WBT)/Computer Based Training (CBT), etc, then Training Transformation is automatically being addressed since the terms are synonymous and interchangeable.

**The Solicitation and Performance Work Statement Training Transformation Directives and References.**



20. The PWS consistently directed offerors to consider DoD Training Transformation initiatives in the Base Services sought by JID. Training Transformation affects almost every area of the Solicitation and PWS in some way. (Attachment 3)

21. Specific ADL Training Transformation initiatives referenced in the PWS and solicitation are Distance Learning, Blended Learning (combination of WBT/CBT and instructor led training), WBT/CBT, Web based registration and testing for MTT's and distribution of courseware to JKDDC hosted Learning Management Systems. Other Training Transformation initiatives include Part Task Trainers as part of instructor led and student self paced training, utilization of the USMTF CBT as an online reference, and utilization of the Purple Book as an online reference guide. All of these Training Transformation requirements must be XML tagged and SCORM conformant.

22. The PWS and the Solicitation specifically reference updating the Purple Book, PWS section 3.1.4 (Attachment 3, page 14). To accomplish the updates requires the Subject Matter Expert (SME) to provide the ISD manager updated material to be vetted against the Joint Program Of Instruction (JPOI) with any recommended graphics identified. The ADL graphics specialist support would convert the graphics for inclusion and then work with the ADL programmer to package the update for SCORM conformance and then work with the WBT/CBT specialist for hosting. If this recommended update was for web page training the web master would be involved. Once completed the instructors would receive a demonstration of the new update for their use.

23. The PWS contains the following specific references to Training Transformation. The PWS does not distinguish whether the Training Transformation requirements which are clearly referenced under the Base Services under Section 3.0 are limited only to the potential Task Orders under Section 4.3. The PWS Introduction section 1.1.1 states:

> Additional documents deemed "Directive in Nature" affecting the JTAO Training Program are contained in Paragraph 4.6 Technical Exhibit VI Documents and References.

24. DoD TTIP, 9 June 2004 is referenced as a directive under Paragraph 4.6 of the



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

PWS not simply guidance for DoD training initiatives.

25. Section 1.1.4 of the PWS states:

Additionally, the training program will adhere to Training Transformation policy and directives designed to provide dynamic, capabilities-based training for the Department of Defense (DoD) in support of national security requirements across the Services and Allied partners.



26. Additional examples of Training Transformation requirements embedded in the PWS include:

- PWS Section 1.3.1 that states "*Joint Exercises provide the JID with venues to conduct live, virtual, and constructive (LVC) training in support of joint interface operations.*" As noted above, LVC is one of the key enablers/initiatives within DoD's Training Transformation program.

- PWS Section 3.0.5 that states "*Provide planning, operations analysis, and support services to include tactical data link training and participation in selected joint Live, Virtual and Constructive (L/V/C) training exercises*".

- PWS Section *3.1.2.3.16* that states "*Develop and implement computer based competency-based achievement tests to measure student performance against specific course learning objectives 60 days after contract award.*" This is an example of the application of asynchronous training when Internet based, and synchronous training when provided via Computer Based Training (CBT).

- PWS Section 3.1.2.4 Classroom Technology. PWS sub-section *3.1.2.4.3* specifying "*Ensure there is a DL equipment expert on-site at the JID whenever DL classes (internal or external) are in progress.*" Distributed (sometimes called Distance) Learning (DL) is an identified enabler for Training Transformation.

- PWS Section *3.1.3* Asynchronous Distance Learning Management specifying "*When Tasked, develop applications and integrate SCORM based curriculum with the SABA or JKDDC Learning Management System (LMS)*". Application and execution of this requirement requires staffing with knowledge of Training Transformation.

- PWS Section *3.1.4* Purple Book Maintenance. This provision states "*The contractor shall: Maintain the JTAO Interface Procedural Handbook (aka "The Purple Book"). Ensure that information contained in the Purple Book is complete and technically accurate. The data files will be treated as a "living document" and maintained solely in an electronic format (SCORM compliant/open systems) on the JID SIPRNET and*



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

*(classification permitting) JID NIPRNET Web-Site.* The Purple Book migration to a "living document" was a task to SDS under the previous contract as a Training Transformation initiative. To maintain it as directed requires the same capabilities and knowledge of ADL Training Transformation enablers to ensure SCORM compliance.

*27.* The sub-sections under PWS Section 3.1.5 Operations Support contain numerous Training Transformation references. The references clearly are directives rather DoD policy guidance since PWS Section 3.1.5 specifies that the "Contractor shall" when referencing the requirements under the individual subsections. The subsection references include:



- Subsection 3.1.5.7-*"Provide Subject Matter Expert (SME) support in Live, Virtual, and Constructive training in support of JICO laboratory and Joint National Training Capability (JNTC) events.*

- Subsection *3.1.5.13- "Maintain virtual training devices such as the Part-Task Trainers and assist in the development and integration of learning media for use with such virtual training devices."* LVC and JNTC events are pillars for Training Transformation.

*28.* The sub-sections under PWS Section *3.1.8* Joint Interoperability Division Support also contain numerous Training Transformation references. The references clearly are directives rather DoD policy guidance since PWS Section 3.1.8 specifies that the "Contractor shall" when referencing the requirements under the individual subsections include:

- Subsection 3.1.8.1 *Web Master and Web Page Management.*

- Subsection 3.1.8.1.1 stating "*Provide for the delivery of electronic materials and linkage to training services across the Internet."*

- Subsection 3.1.8.1.2 stating *"Design and build Web site structures, provide graphic support, and scan and link training files and materials to support in-garrison and distance learning courses."*

- Subsection 3.1.8.1.3 stating *"Make use of the hypertext linking and organizational capabilities of the World Wide Web to provide integrated access to a variety of course-related materials."*

- Subsection *3.1.8.1.4* stating "*Provide remote access to multimedia materials and specialized training databases".*

- Subsection *3.1.8.1.5* stating *"Construct Web sites for organizing and linking course- related resources to support distance learning."* In these sections DL is defined as distance learning and as such directly supports Training



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

Transformation initiatives.

**Base Services versus Potential Task Orders**

29. The PWS and solicitation instructions directed offerors to provide sufficient staffing necessary to meet the Training Transformation requirements for the base services covered by Section 3.0 of the PWS, and the specific sub-sections discussed above.



30. The PWS and solicitation also required that offerors submit hourly rates for estimated hours necessary to meet potential Task Orders as specified under Sections 4.3 of the PWS. The potential task orders under sub-sections 4.3.1 through 4.3.5 represent additional services over and above the base services specified under Section 3.0 of the PWS.

31. Although the services associated with the potential task orders also contain Training Transformation requirements, the Training Transformation requirements specified throughout the PWS are not limited to the potential task orders. This is because the first directive guidance in the PWS required the offeror to insure that the JTAO Interface Training Program to comply with CJCSI 3500.01C, and also adhere to DoD Training Transformation Policy without regard to whether the training was conducted through the Base Services or Potential Task Orders (Attachment 2, page 2, para. 1.1.4).

32. Furthermore, neither the PWS nor the Solicitation contained any language that specified that the Training Transformation requirements were limited to the potential Task Orders under sections 4.3 of the PWS. On the contrary, paragraph PWS Paragraph 3.2.6 ("Task Orders") and the sub-paragraphs under it (3.2.6.1 etc) specifically stated that services related to potential task orders were in addition to the Base Services specified under PWS Sections 3.0 through 3.2.5. This was made crystal clear to SDS by the following specific language under sub-paragraph 3.2.6.1:

> Additional work requirements related to supporting JID core competences maybe performed as task orders and issued in accordance with the terms of this contract

33. Finally, as discussed above, the Training Transformation requirements were contained throughout the base services described under Section 3.0 of the PWS, and the sections and sub-sections specified under Section 3.0.

**Key Staffing necessary to meet Training Transformation Initiative in the PWS**

34. PWS Section *3.2.7* *Key Functions Clause* and PWS Section 4.4.4 specified that offerors were required to identify key personnel with their initial offer. The PWS



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

also prohibited the substitution of identified key personnel without JID permission. Thus the services to be provided by key personnel were to be included in the base services rather than the potential task orders.

35. PWS Section 4.4 contained specified job descriptions for key personnel. One of the key personnel listed was the Instructional System Development (ISD) Manager under subsection 4.4.6. That persons specific duties related directly to Training Transformation requirements since they included the following specific duties: Manage specific multimedia courseware for: Advanced Distributed Learning (ADL) for: synchronous distance learning, and asynchronous web-based training. ADL is clearly a requirement for the Base Contract is directly related to Training Transformation requirements.



**Other Staffing Necessary to meet the Training Transformation Requirements**

36. Since Training Transformation and the enabling elements are requirements in support of the base services described under Section 3.0 of the PWS. Personnel with specific skills and training are required to execute these base requirements from contract start up. Those services require that base services focus on the more specific requirements of LVC, ADL (in both distance and distributed learning), SCORM programming and SCORM conformant graphics supportability, and ISD as it relates to ADL.

37. For example PWS Section 3.1.5.7 specifically called out for a SME to support LVC training in support of both the JICO laboratory and JNTC events. While 3.1.5.7 is a single line requirement, it is a large embracing requirement as LVC JNTC functions require the skills of specially trained personnel with requisite experience.

38. The base service requirements identified under PWS sub-sections 3.1.2.3.16, 3.1.3, 3.1.4, and 3.1.8 required an ADL knowledgeable and SCORM staffing to support the highly specific requirements of developing and/or manipulating SCORM conformant content, including graphics for use on both SIPRNET and NIPRNET websites.

39. Additionally, the base services development of ADL graphics and web page management and construction identified under PWS sub-sections 3.1.8.1.1 and 3.1.8.1.2 and 3.1.8.1.5 requires staffing containing highly a highly specialized skill sets including experience with the development of SCORM conformant graphics in support of JID programs. Those requirements obviously require staffing with skill sets necessary to support Web Based Training (WBT)/Computer Based Training (CBT).

**SDS Staffing and Technical Approach to Training Transformation**



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

40. The SDS technical proposal included a Position Matrix of FTE staffing that SDS intended to devote to performance of the Base Services technical requirements specified in the PWS, as well as the critical key staff functions that were described under paragraph 4.4 of the PWS. (Attachment 4). Those technical requirements included the functions specified under Section 3.1 of the PWS, and the sub-paragraphs under Section 3.1, as well as the job descriptions and critical key staff functional requirements specified under paragraph 4.4 of the PWS. Section 2.6 and subsections 2.6.1 through 2.6.3 of the SDS written Quality Proposal specifically described SDS's approach to meeting DoD's Training Transformation policy (Attachment 5).



41. SDS's Position Matrix specified 36 FTE positions that SDS's intended to devote to meeting all the technical functions for Base Services specified under Section 3.1 of the PWS, and the critical key staffing functions described under Paragraph 4.4 of the PWS. SDS proposed 7 of the 36 FTE's specifically to address the Training Transformation requirements embedded in the PWS and the knowledge enablers referenced within the subparagraphs of the PWS that are discussed above.

42. I want to make it clear to the Court that that SDS's technical approach and its proposed FTE staffing that it intended addressing Training Transformation was not limited to potential Task Orders described under sub-paragraphs 4.3.2, 4.3.3, or 4.3.5 of the PWS. Those sections specifically referenced possible web/computer based revisions to training courses (4.3.2), Part-Task Trainer Spirals (4.3.3) and V/C/T support (4.3.5). However, for the reasons discussed above as was necessary for Base Services discussed above to incorporate the Training Transformation enablers such as ADL, SCORM conformance, LVC etc.

43. The PWS contained specific references to those enablers within the technical functions specifically called out in a number of the PWS sub-paragraphs applicable to base services. the Our proposal in no way indicated that SDS's critical or non critical staffing necessary to meet the Training Transformation requirements would be limited to potential Task Orders.

44. SDS identified its proposed FTE staffing and the experience of its proposed staffing within its technical approach because the Solicitation instructions required that the offerors' technical approached specifically reference the resources, staffing , organizational structure and number of personnel performing all work under the functional areas called out in the Solicitation. The Solicitation specifically stated:

> Technical approach shall identify, at a minimum, the organizational structure, number of personnel performing the work in management and functional areas and job classification and methods, if any, for



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

> cross utilization of assigned personnel. A staff of key personnel with proven qualification of leadership, education and experience commensurate with the position proposed is considered essential for contract performance. No waivers of key personnel minimum qualifications shall be considered. The contractor shall also identify the minimum education, experience and skill qualifications that will be used to solicit/hire non key personnel positions.[2]

45. SDS's Position Matrix identified the following positions that would perform technical functions directly related to DoD's Training Transformation policy



requirements embedded in the PWS and the knowledge enablers specifically referenced in the PWS:

- ISD Manager
- Modeling and Simulation (LVC) Planner
- ADL Programmer
- ADL Specialist
- WBT/CBT Specialist
- Web/data base manager
- ADL graphics specialist

46. SDS proposed an ISD Manager for the reasons stated above.

47. SDS proposed all of the above referenced FTE staffing positions, and the experience identified in the Position Matrix to specifically address the requirements PWS Section 3.1.3 Asynchronous Distance Learning (ADL) that required development of applications and integration of SCORM based curriculum with the SABA or JKDDC Learning Management System (LMS). Application and execution of this requirement requires staffing with knowledge of Training Transformation.

48. SDS proposed a Modeling and Simulation Planner (LVC), Frank Hill, because PWS sub-paragraph Section 3.1.5.7 specifically called out for a Subject Matter Expert (SME) to support LVC training in support of both the JICO laboratory and JNTC events. The clear wording of that specific provision required that a technical approach include specific staffing to act as an LVC SME to support the laboratory and training events. As I said above, while 3.1.5.7 is a single line requirement, it is a large embracing requirement as LVC JNTC functions require the skills of specially trained personnel with requisite experience.

---

[2] This quotation is taken directly from the Instructions in Section L of the Solicitation.



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

49. SDS proposed the Modeling and Simulation Planner (LVC), Frank Hill, to address PWS sub-paragraph 3.1.5.13. That provision specifically required that the SDS propose personnel to assist in the development and integration of learning media for use with virtual training tools. The PWS specified that SDS, or any offeror was not required simply to maintain the prior tools. On the contrary, Subparagraph 3.1.5.13 specifically directed SDS also had to assist in new development. That specific function required the higher skill sets that SDS specifically identified for the personnel listed in its Position Matrix.


50. SDS proposed an ADL programmer, an ADL WBT/CBT Specialist and an ADL graphics specialist to directly address the requirements specified under PWS subsections 3.1.8.1 through 3.1.8.5. The technical functions in those sections, which were within the base services specifically required staffing to design and build web structures, construct web sites to support distance learning and perform specific development functions directly related to distance learning and the delivery of distance learning across the internet. Those functions related directly to the development of web based learning tools, including graphics, and required higher skill sets than the skill sets required simply to maintain an existing web page or existing web based learning materials.

51. In addition, SDS was required to maintain the purple book as a living document To accomplish the updates requires the Subject Matter Expert (SME) to provide the ISD manager updated material to be vetted against the Joint Program Of Instruction (JPOI) with any recommended graphics identified. The ADL graphics specialist support would convert the graphics for inclusion and then work with the ADL programmer to package the update for SCORM conformance and then work with the WBT/CBT specialist for hosting. If this recommended update was for web page training the web master would be involved. Once completed the instructors would receive a demonstration of the new update for their use.

We know that an ADL knowledgeable, SCORM knowledgeable computer programmer and an ADL graphics specialist are required to support the highly specific requirements of developing and/or manipulating SCORM conformant content for use on both SIPRNET and NIPRNET websites. We selected Ms. Dianna Knight who had led the development of SCORM conformant content for ADL compliant programs in use by the JID today. Her knowledge of JID systems and programs made her a natural fit for the requirement. Additionally, the development of ADL graphics is also a highly specialized skill set. We identified Mr. Eric Jackson who had been developing SCORM conformant graphics in support of JID programs. We also included a Web Based Training (WBT)/Computer Based Training (CBT) specialist, Mr. Kenneth Burley, to work with the ADL programmer and ADL graphics personnel to assist the packaging for asynchronous and/or synchronous training. Additionally, these individuals hold the requisite security clearances to immediately provide capability.

<u>SDS's Key Critical Staffing</u>



**Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order**

52. SDS's Position Matrix identified eight positions necessary to address the critical functions and job descriptions listed under Paragraph 4.4. of the PWS. In addition to the Program Manager (Jeff Moddle), SDS's proposal listed the following key personnel;
    - Training Manager-Brian Bass
    - ISD Manager-Sara Bryan
    - Link 16 Network Design Engineer-Neal Hesser
    - Lead Information Systems/Network Administrator-Tony Broadhead
    - JTIDS/MIDS Deconfliction Server Specialist (I/SME)-Charles Avery
    - Lead I/SME (JICO)-James Lee
    - I/SME(JICO Communications)-Hap Skandrett



53. SDS specifically identified those key persons in its technical approach and Position Matrix because those positions were necessary to fulfill the technical functions lists under PWS sub-paragraphs 4.4.1 through 4.4.6 and, under the critical functions clause in the PWS (3.2.7) SDS, or any offeror was prohibited from substituting or adding key personnel after award, and during the first six months of performance (sub-paragraphs 3.2.7.1 and 3.2.7.2).

Further Affiant sayeth not:

William Bayer

Date: 5 FEB 2008

Notary public:

My commission expires: May 31, 2010



Contains Protected Material not to be Released Except in Accordance with a USCFC Protective Order