**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**
**BID PROTEST**

**REDACTED VERSION**

| | |
|---|---|
| SDS INTERNATIONAL, INC. | |
| Plaintiff, | |
| v. | USCFC No. 07-881 C<br>Judge Weise |
| THE UNITED STATES | |
| Defendant. | |

**PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT-INTERVENOR OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION[1]**

**COMES NOW,** Plaintiff SDS International, Inc. ("SDS"), by and through undersigned counsel, and pursuant to USCFC Rules 7.2(b), 52.1, and 65 hereby files its Reply to Defendant's Motion for Judgment on the Administrative Record, its Reply to Defendant's Response to SDS's Motion for Preliminary Injunction, and its Reply to Defendant Intervenor-HiPK's Inc. ("HiPK") Opposition to SDS's Motion for Preliminary Injunction. For the reasons stated herein, the Court should grant SDS's Motion for Preliminary Injunction, and order the government to terminate HiPK's contract or, at a minimum, order suspension of performance pending issuance of a permanent injunction in this matter.

[1] All assertions herein are based upon the Administrative Record the government previously filed with the Court (AR Tab __ p. __); the Affidavit of George Gennin (Gennin Aff. ¶ __); the Affidavit of William Bayer (Bayer Aff. ¶ __); the Affidavit of Brian Wages (Wages Aff. ¶ __); the Affidavit of James Tyson ( Tyson Aff. ¶ __); the Affidavit of Robert Sorukas (Sorukas Aff. ¶ __); the document filed as Exhibit 1 to HiPK's Opposition (HiPK Exhibit 1); and the Affidavit of LTC James Sorensen (Sorensen Aff. ¶ __). SDS is filing a separate Motion to Supplement the Administrative Record with the Affidavits prepared by Mr. Bayer, (Exhibit 1), Mr. Gennin (Exhibit 2) and Mr. Wages (Exhibit 3). Neither the Government nor HiPK have yet filed Motions to Supplement the Administrative Record even though their Response briefs rely on extra record documents, such as the Tyson and Sorukas Affidavits. SDS's Reply cites to those documents on the assumption that the Defendant parties will file the appropriate motions.

# I. SUMMARY OF THE CASE

## A. SDS Meets All Requirements Necessary to Obtain a Preliminary Injunction

SDS is entitled to a preliminary injunction because it meets all four criteria necessary to obtain such relief. SDS can demonstrate a likelihood of success on the merits and irreparable harm in the absence of requested relief. SDS can also demonstrate that both the balancing of hardships to the parties and the public interest tilt in favor of its request. SDS International, Inc. v. United States, 55 Fed. Cl. 363 (2003); see also Erinys Iraq Ltd. v. United States, 78 Fed. Cl. 518, 526 (2007); KSD v. United States, 72 Fed. Cl. 236, 266 (2006). On the merits, the government ignored the Solicitation and the requirements specified in the Performance Work Statement ("PWS") when it made an award in response to HiPK's non-conforming offer.[2]

On the balancing of hardships, SDS has suffered and will continue to suffer irreparable injury if it does not obtain a preliminary injunction. The government denied SDS the fundamental right to compete fairly in the acquisition. As a result, SDS has lost and will continue to lose profits that it rightfully would earn from a contract award and may never again be in a position to compete for the services at issue if this matter is delayed further. On the balancing of hardships, this presents a very unusual case because normally the protester can not overcome the Herculean burden of demonstrating that the balance of hardships tilts in favor of short-term relief. In his case, however, SDS can meet the government's immediate need for the services. Thus the government will not be injured by the issuance of a preliminary injunction. HiPK can not demonstrate that it will suffer the level of irreparable injury that would mitigate against preliminary relief in SDS's favor since HiPK will be reimbursed for all costs it has incurred to date under the terms of its contract. HiPK's potential future lost revenues are not a mitigating factor

[2] In addition, after award, the government allowed HiPK [redacted] Finally, there is no evidence in the record that supports the reasonableness of the government's price realism analysis and the assignment of adjectival ratings related to performance risk.

since HiPK was illegally awarded a contract. Furthermore, the public interest dictates that the Court should act because the government has created its own problems through its conduct over the past eight months. The only demonstrated harm to the government stems from a potential loss of Fiscal Year 2007 funds. Even if true, that issue was caused solely by ACA's award to a non-conforming bidder. ACA then compounded its mistake when it ignored several opportunities to correct those mistakes during Fiscal Year 2007.

### B. A Preliminary Injunction is Particularly Appropriate in this Case

The balance of hardships favors resolution of this matter now. A decision on the merits turns on an issue of contract interpretation based upon a record that has already been fully developed. The government claims that it can not suffer any break in the services at issue. The government's position is that the current PWS describes services that meet its needs. If the Court rules that SDS is correct regarding SDS's interpretation of the PWS, and the nonconformance of HiPK's proposal, and it should, then the Court will be presented with the following situation: The innocent party, SDS, was the only party that correctly responded to the PWS. SDS is in position to immediately provide the services at issue. Neither SDS nor the government will suffer any further harm. The Government can look to SDS to provide the services in the short run under the current PWS. If the government believes that the PWS did not meet its long term needs for the services, it can—during the base year of SDS's performance—decide to conduct a new acquisition. It can subsequently revise the PWS and request new offerors. In the short run the government can legally obtain the services at issue by using SDS. [3]

### B. SDS's Interpretation of the PWS is Reasonable

[3] The alternative would be for the government to cancel the entire acquisition now and begin an entirely new acquisition. The government is unlikely to take that route given the need for the services. If the government cancels this acquisition, however, it can not simply award a bridge contract to HiPK without conducting a new competition as required under FAR sub-part 6.3. There are at least two offerors, SDS and HiPK, who are available for a new competition and the government would not be able to justify a sole-source award.

SDS has presented a reasonable interpretation of the PWS that is based upon a reasonable reading of the PWS as a whole, which is supported by specific language in the PWS. The PWS language required that offerors consider DoD's T2 policy when they prepared their technical approaches and related staffing. All of that language is addressed in Mr. Bayer's Affidavit.

For example, Paragraph 1.14 of the PWS required that the entire DoD training program for which the offerors were providing services adhere to DoD's T2 policy. Even the government has admitted that offerors were required to adhere to that policy and has gone so far as state that the Solicitation is an example of DoD's T2 policy. Paragraph 4.6 of the PWS referenced the June 2004 Training Transformation Implementation Plan (TTIP) as a mandatory directive that offerors were required to consider where appropriate in preparing a technical approach that met the government's needs. The PWS contained [redacted] A number of the PWS functions specified in the Base Services contained [redacted] further DoD's T2 policy. As demonstrated by Mr. Bayer, however, SDS's interpretation is based upon the specific language under functions specified in the PWS, and not simply the need for SDS to consider broad DoD policy.

In order to [redacted] requirements, offerors were required to [redacted]. For example, [redacted] The offeror was required to [redacted] Several PWS functions [redacted] SDS's [redacted]

HiPK's technical approach [redacted]. The government [redacted] when it initially evaluated the offerors. In ACA's response to SDS's Agency Protest, ACA specifically [redacted]s. Subsequently, [redacted] adopted a different interpretation. Now the government maintains that the PWS did not require that offerors propose staffing related to T2 anywhere in their technical approaches. That is not a reasonable interpretation of the PWS because it does not provide any meaning to language in the functions under specific sub-sections of the PWS.[4] Those sections described functions t[redacted]

In support of its interpretation and current with this Reply, SDS is filing an Affidavit prepared by William Bayer.[5] Mr. Bayer presents the Court with background information regarding DoD's T2 policy, a detailed analysis of the PWS language that supports SDS's interpretation and a description of SDS's staffing at issue. The conclusions contained in Mr. Bayer's Affidavit are supported by the language in the PWS. He specifically discussed the [redacted][6] SDS also is filing an Affidavit [redacted] [redacted]

---

[4] The fact that the government would take that position is ridiculous since the government had already reviewed HiPK's proposal. The proposal [redacted] ACA took that contrived position in FY 2007 when there was still time to take corrective action without jeopardizing funding. A potential loss of FY 2007 is the only uncontroverted harm DoD has been able to articulate in this matter. DoD caused its own problems and it should not be allowed even to raise that issue in regards to the public interest test.

[5] The Attached Affidavit [redacted]

reviewed HiPK's proposal and other documentation. He [redacted].[7] SDS also is filing an Affidavit of its Chief Executive Officer George Gennin [redacted]

## II. THE MERITS OF SDS'S CASE

### A. SDS's Position on the T2 Issue

SDS [redacted] and the government's Response does not provide support for any other conclusion. SDS's proposal was based upon a reasonable interpretation of the PWS. SDS offered [redacted]. The government's response [redacted] The government asserts that the solicitation is an example of DoD's attempt to implement Training Transformation, and that the offerors were required to "adhere" to that policy (see e.g., Government Response at page 16-"the solicitation at issue in this case represents an example of that implementation; that is the solicitation is an example of Training transformation in action"; see also Government Response at p. 18).

---

[6] Mr. Bayer's reliance on specific language in the PWS in support of his conclusions contrasts with the conclusions of ACA representative James Tyson, whose affidavit the Government submitted with its Response. Mr. Tyson barely discussed specific language in the PWS, and when he did several of his conclusions are contrary to specific language in the PWS.

[7] SDS is only offering Mr. Wages' affidavit in support of its position [redacted] ACA already [redacted] SDS recognizes that the Court will not analyze the proposals in ruling on this Motion, nor will it substitute its judgment in place of the Agency. It does not have to engage in either function to find in favor of SDS. It need only decide whether HiPK's proposal was noncompliant, and the record demonstrates that it was non complaint.

The government's position is consistent with [redacted] (Bayer Aff. ¶¶ 12-14.) The Government's response, however, mischaracterizes SDS's position regarding T2 and then offers an overly restrictive interpretation of the PWS, which fails to consider specific language in the PWS. The government simply argues that [redacted] SDS [redacted] SDS's position [redacted]

For example, Mr. Bayer's Affidavit [redacted] (Bayer Aff. ¶¶ 16, 20-28.) [redacted] (Bayer Aff. ¶¶ 34-39.)

SDS [redacted]. (Bayer Aff. ¶¶ 40-51.) SDS's [redacted] SDS's [redacted] (Bayer Aff. ¶¶ 40-51.) SDS's case [redacted]

[redacted]. SDS's [redacted] which required that SDS [redacted]

B. **The Government's Position on the T2 Issue**

The government's response is based upon Mr. Tyson's affidavit. In contrast to Mr. Bayer, Mr. Tyson barely addresses the specific language in the PWS, and when he attempts to do so, his assertions are inconsistent with the language in the PWS. For example, in paragraph 6, Mr. Tyson describes [redacted]

> [redacted]

(Tyson Aff. ¶ 6.)

That statement is completely inconsistent [redacted] Those PWS sub-sections [redacted] (AR Tab 3, pp. 109 & 111; Bayer Affidavit ¶¶ 27-28.) Mr. Tyson does not even address those PWS sections.[8]

[8] SDS is requesting a hearing on this matter and will make Mr. Bayer available to explain his interpretation of the PWS. We presume that the government will be willing to do the same regarding Mr. Tyson.

Most of Mr. Tyson's Affidavit provides the Court with background information [redacted] and his opinion that [redacted] (Tyson Aff. ¶¶ 1-5, 7-10.) Many of those assertions are not even germane to this dispute and others avoid the issue. SDS has never maintained t[redacted]. (Bayer Aff. ¶¶ 27, 37, 48.) Mr. Tyson's Affidavit does not address the language in the PWS. Mr. Bayer's Affidavit focuses on the language of the PWS.[9]

### C. <u>HiPK's Position on Training Transformation</u>

HiPK simply adopts the government's position and then maintains that SDS's [redacted] and "[redacted]." (HiPK Response at p. 4.) SDS's entire position [redacted]. This case turns on the language of the PWS, and a reasonable interpretation of that language supports the merits of SDS's case. Contrary to HiPK's position, SDS [redacted]" (<u>See</u> HiPK Response at pp. 6-7.) The PWS defined [redacted]

HiPK also argues that [redacted] HiPK claims [redacted]

---

[9] LTC Sorensen's Affidavit a[redacted] (Sorensen Aff. ¶5.) That position [redacted]

[redacted] There is no ambiguity and HiPK is [redacted] (AR Tab 3, p. 136.) The d[redacted][10] They do not create an ambiguity—either patent or latent—because [redacted]

.

**D. <u>Non-compliance of HiPK's Proposal Regarding Training Transformation</u>**

HiPK's technical proposal failed to comply with the terms of the Solicitation because [redacted]. [redacted] In contrast, HiPK specifically [redacted]

---

[10] SDS counsel made that exact point in the initial status conference when HiPK's counsel first raised this issue. HiPK's counsel knows or should know t[redacted].

[11] Mr. Tyson did not address these PWS sections in his Affidavit.

PWS [redacted] SDS [redacted] In contrast, HiPK's t[redacted]

The [redacted] HiPK's offer was non-compliant [redacted]

**E. <u>The Government's Response to SDS's Agency Protest</u>**

The Government's original response to SDS's Agency Protest [redacted] ACA admitted that HiPK [redacted] If this Court concludes that [redacted]

likely prevail on the merits. In response to SDS's agency protest, ACA previously [redacted])[12] ACA [redacted]

F. **The Merits of SDS Case-**[redacted]

The Government's Response failed to [redacted]. Mr Gennin's affidavit [redacted]

The Government's Response and Lieutenant Colonel Sorensen's Affidavit f[redacted] Regarding [redacted] That is not the point. The issue is whether, after award, HiPK [redacted] If the government did so than [redacted]

[12] DoJ counsel excoriates SDS for asserting that the government already made a crucial admission on this particular issue. SDS requests that the Court simply read ACA's own conclusions in its response to SDS's Agency Protest. The long standing rule that the Court not substitute its judgment for the judgment of the Contracting Agency does not mean that the Court should disregard a clear admission by the agency regarding its own conclusions over the respective offerors' technical approaches, especially when the agency reached those conclusions during the initial proposal review.

[redacted] at paragraph 3.2.7 of the PWS. That clause prohibited [redacted])[13] Lieutenant Colonel Sorensen's Affidavit [redacted]

G. **The Price Realism Issue**

The Government's Response does not address SDS's allegations that ACA has never preformed a reasonable price realism analysis in support of the adjectival ratings related to performance risk.[14] As a result of the corrective action, [redacted]Compare AR Tab 26, p. 1913 with AR Tab 29, p. 1922.) ACA did not [redacted] Id. The record does not [redacted] Furthermore, after the government revised the IGE, it admitted [redacted] The government then concludes without any explanation that HiPK's [redacted]. The purpose of a price realism [redacted] Information Sciences Corp. v. U.S., 73 Fed. Cl. 70, 102 (2006).

---

[13] The Court will not substitute its judgment in place of LTC. Sorensen's judgment [redacted] Without doing so, the Court can still conclude that t[redacted]

[14] Government counsel's only response on his issue was a reference to a statement made by the undersigned during the preliminary status conference. At that point in time SDS had not even been provided with any documentation regarding ACA's corrective action pertaining to price realism or the agency's revision of the IGE. The record now shows that the agency [redacted].

Furthermore, the agency record contains no explanation of the adjectival ratings applicable to performance risk. ACA [redacted] Then the government [redacted] The record contains no explanation as to how the government determined that [redacted] Without some minimal explanation, the Court can not determine that the ratings had any rational basis.

## III. IRREPERABLE HARM TO SDS

SDS meets the second factor that this court must consider in issuing a preliminary injunction. SDS will suffer irreparable harm in the event that the Court does not order ACA to suspend HiPKs' performance and/or terminate the contract illegally awarded to HiPK. SDS [redacted] (Gennin Aff. ¶ 5.) The irreparable harm to SDS goes beyond a simple loss of profits. In the long run, SDS [redacted] Gennin Aff. ¶¶ 6-7.) That potential injury is exacerbated the longer this matter remains unresolved. Id. Furthermore, the government denied SDS an opportunity to compete on a level playing field by making an illegal award to HiPK in response to HIPK's non-conforming technical proposal. Thus SDS has already suffered an irreparable injury [redacted] and the lost opportunity to compete on a level playing field.

The Court previously has found that [redacted] [redacted] and a lost opportunity to fairly compete constitutes sufficient irreparable injury in support of an injunction, Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 647. The record before the Court in Geo-Seis Helicopters was analogous to this case since the illegal award in Geo-Seis Helicopters was based upon a proposal which the Court determined

should never have been accepted for purposes of award. Id at pp. 645, 646.[15] In Geo-Seis Helicopters, the court recognized its limited ability to award monetary damages to compensate a contractor for harm caused by illegalities in the acquisition. In discussing irreparable injury, the Court stated:

> In determining whether Geo-Seis will suffer irreparable harm if the court denies the injunctive relief requested, this court begins with the question whether Geo-Seis has an adequate remedy at law. Although the "mere loss of money does not qualify as irreparable harm if the party can be made whole through money damages," *Hawaiian Dredging Constr. Co. v. United States*, 59 Fed.Cl. 305, 317 (2004), by statute, in a bid-protest case, the court is very constrained in the monetary relief it can grant. See 28 U.S.C. § 1491(b)(2) ("any monetary relief shall be limited to bid preparation and proposal costs"). Thus, in a bid protest, "[a] lost opportunity to compete on a level playing field for a contract … has been found sufficient to prove irreparable harm." *Seattle Sec. Servs., Inc. v. United States*, 45 Fed.Cl. 560, 571 (2000); see also *Hospital Klean*, 65 Fed.Cl. at 624 ("Here, absent injunctive relief, [plaintiff] will lose the opportunity to earn the profit it would have made under this contract.").
> Given the Sealift Command's Contracting Officer's contravention of FAR § 52.215-1 (c)(3)(ii)(A) and the Command's erroneous award of a contract to Presidential, Geo-Seis has demonstrated that this court's failure to enjoin the Command's performance of the contract with Presidential would cause Geo-Seis irreparable harm

Id. at 647.

[15] The protester in Geo-Seis Helicopters ultimately was unable to obtain a permanent injunction because the government was able to demonstrate that the injunction would have impeded the Government's ability to obtain the services at issue on a timely basis. Given SDS's [redacted]

There is no question that SDS can demonstrate an irreparable injury necessary to meet the second test. The Court still must, however, balance the hardships to the parties, and then determine whether the public interest favors granting injunctive relief. PGBA, LLC v. United States, 389 F. 3d 1219, 1228, 1229 (Fed. Cir. 2004); Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 639, 647. SDS can meet both tests.

## IV. BALANCE OF HARDSHIPS

### A. SDS versus HiPK

The balance of hardships to the parties, SDS, HiPK and the government favors granting injunctive relief. Balancing the potential future monetary hardship to SDS and HiPK in the form of lost profits or revenues is not determinative. In the event that the Court grants relief, HiPK [redacted] The same hardship applies to SDS in the event that the Court denies the relief. (Compare Gennin Aff. ¶ 5 -[redacted] with Sorukas Aff. -[redacted])[16] Mr. Sorukas's Affidavit d[redacted]. (Sorukas Aff. ¶¶ 6, 9, 12, 13, 14.) Those costs do not mitigate against equitable relief. HiPK [redacted] The other injuries cited by Mr. Sorukas, such as a [redacted]o not mitigate against equitable relief, since HiPK should never have received the award in the first place. Unlike SDS, HiPK failed to properly bid the contract. HiPK's potential injuries pale in comparison to SDS, which was the only offeror that properly bid the contract, and is now suffering as a result.

### B. SDS versus HiPK

[16] This comparison presumes, however, that Mr. Sorukas's statement regarding lost revenues is even remotely accurate. It is highly suspect since $[redacted]. (AR Tab 25, p. 1462.)

The balance of hardships between SDS and the Government also favors granting injunctive relief. The Government will not suffer any hardship [redacted] Most importantly, the Court's issuance of a preliminary [redacted] That fact is demonstrated by a comparison of the affidavits submitted by Mr. Gennin and Lieutenant Colonel Sorensen.

Lieutenant Colonel Sorensen asserts [redacted] (Sorensen Aff. ¶ 6.) Those facts do not mitigate against granting a preliminary injunction because [redacted] Lieutenant Colonel Sorensen. Mr. Gennin's Affidavit explains [redacted]

JID will not suffer any hardship regarding its ability to obtain the services at issue. The only other injury asserted by Lieutenant Colonel Sorensen concerns [redacted] That particular injury, even if true, was caused directly by the government's own conduct in conducting this acquisition. [redacted] circumstances in this case should not mitigate against granting the preliminary injunction. On the contrary, the circumstances surrounding that particular issue favor issuing an injunction in the public interest.

## V. <u>The Public Interest</u>

The [redacted] even if true, was caused solely by JID's own mistakes, including its repeated failure to correct those mistakes on a timely basis. The record demonstrates that ACA ignored numerous opportunities to correct those mistakes. Since [redacted] this Court, by serving the public interest, should not allow the government to benefit from its own conduct.

It is fundamental that awards are made on the basis of the requirements specified in a solicitation. If the Court rules in favor of SDS on the merits, it will do so based on its conclusion that JID initially awarded a contract to a party that did not comply with the Solicitation. JID should have reached that conclusion on its own during the evaluation process. It made a mistake when it did not do so. Then, however, JID twice had ample opportunity to correct that error during Fiscal Year 2007, when SDS made the same arguments regarding the staffing necessary to address DoD's T2 policies that it has made in this action. First, JID and/or ACA could have taken corrective action in response to the Agency protest. It chose not to do so, even though its own decision [redacted] In its own decision, ACA recognized [redacted] When SDS then sought relief at GAO, again in Fiscal Year 2007, SDS provided a reasonable [redacted] the same interpretation it has presented in this forum. ACA could have taken corrective action at that point in time.

Instead, ACA responded with an interpretation that [redacted] ACA took that new, completely contrived position despite the earlier response to SDS's Agency Protest. ACA took that position despite the fact that HiPK's proposal [redacted] Before this forum, the Government has adopted the same position regarding the interpretation of the

Solicitation. According to the government, [redacted] That interpretation has never been reasonable, and the government basically has stonewalled from the very beginning. Now it asks the Court to deny equitable relief because [redacted] The Court should reject that argument in the public interest, and it should do so without any hesitation.

Under the public interest test, the Court balances the overriding public interest in preserving the integrity of the procurement process when awarding a contract, while at the same time assuring that the Department of Defense can receive the services it needs on a timely basis. Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 639, 647; Hospital Klean v. United States, 65 Fed. Cl. 624. Normally, equitable relief is not available because the government, and DoD in particular can not suffer delays in performance once a contract has been awarded. See e.g., Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 639, 647 (denying injunctive relief but awarding bid preparation costs upon demonstration that the government would suffer a delay in services). That is not the situation in this case since SDS [redacted] The only factor offered by the government is [redacted] That factor can not mitigate against the issuance of an injunction since it was due solely by the government's failure to correct its own mistakes.

## VI. Conclusion

For the reasons specified herein, SDS respectfully requests that the Court grant the requested relief and enter judgment in favor of the Plaintiff.

Respectfully submitted,

Date: ____________ By: ______________________________

Christopher M. Johnson,
Centre Law Group, LLC
1953 Gallows Rd, Suite 650
Vienna, VA. 22102
(703) 288-2800
(703) 288-4868 (fax)

Brian C. Caney-of Counsel

Counsel for Plaintiff
SDS International, Inc.